## STATE v BRIGHAM

Ohio Appeals, 2nd Dist, Clark Co

No 374.   Decided Dec 18, 1937

Robert Morean, Springfield, for defendant-appellant.

Abe Gardner, for plaintiff-appellee.

## OPINION

By HORNBECK, J.

This cause is brought into this court on what purports to be a petition in error. The proceedings followed by counsel for appellant have, in all particulars, been as though the cause proceeded under the old form of error, which has not been effect-

ive in Ohio since January 1, 1936. However, inasmuch as the substance of that which has been done conforms to the new Appellate Act, and leave to file the appeal has been granted, the cause comes before us properly for consideration as an appeal on questions of law.

The appellant was charged with the offense of selling intoxicating liquor, to-wit, one-half pint of whiskey, contrary to §6064-54 GC. The defendant entered a plea of not guilty and was tried to the court acting as a trier of the facts and determiner of the law of the case.

Two witnesses testified for the state, both of whom were inspectors in the employ of the Ohio Liquor Control Board. The defendant took the stand, denied the accusation and offered other witnesses to corroborate this denial and to establish his good reputation. Defendant moved for a new trial and arrest of judgment, both of which were overruled and defendant sentenced to pay fine of $300.00 and to be committed to the Dayton, Ohio, City Work House until fine and costs are paid.

The assignments of error are four:

(1) Refusal of court to sustain the motion in arrest of judgment.

(2) That §6064-54 GC is unconstitutional.

(3) That the sentence was contrary to the evidence and appellant was never identified with the crime charged.

(4) Permission by the court to the prosecutor to make statements concerning a previous conviction of defendant, which statements are untrue.

The second branch of the claimed error is not definite enough for this court to give it consideration. No article or section of the State or Federal Constitution is set forth, which it is claimed §6064-54 GC contravenes nor was the attention of the trial court directed to the claimed unconstitutionality of this section.

The fourth assignment of error is not directed to the questions of the prosecutor put to several witnesses respecting a prior conviction of the defendant which apparently was not supported but to statements which the court permitted the prosecutor to make. Such statements do not appear in the record and the error, if any, of the court in permitting the questions to be propounded to the witnesses and answer to be made, it is not before us because there is not an objection by counsel for defendant in the bill of exceptions directed to the testimony.

The first and third assignments may be considered together and reach the question whether or not, upon the whole record, the trial judge was justified in returning a verdict of guilty, entering judgment thereon and sentencing the defendant.

We have read this record with care and are convinced that it is inadequate to sustain a conviction against the defendant of a criminal offense. It should be kept in mind at all times that the obligation of the state is to establish the guilt of one charged with crime by evidence beyond a reasonable doubt. The trial court should be accorded every prerogative incident to his right to determine the credibility of the witnesses and to weigh the testimony, but when it becomes apparent that there is a failure of proof or such inadequacy of testimony or uncertainty of conviction as to require a finding of "not proven," the trial court must act accordingly and a reviewing court cannot disregard a situation thus presented.

The charge in this case was that the defendant made one sale of whiskey to Thompson Jackson, a State Liquor Control Board Inspector, for which he paid the defendant thirty cents. He and his associate, Mr. DeWine, so they testified, went to the home of the defendant at 10:00 o'clock in the evening on the 26th of February, 1937. Neither of them knows the day of the week when they made the purchase, whether or not the house in which the defendant lived and to which they claimed to have gone was frame or brick, whether or not it had front, side or rear porches, and our attention is directed to this lack of information on the part of the inspectors. This alone would not at all control as it might well be that because of the rush of business they could not remember the day of the week when the liquor was purchased and as the purchase was made in a night season in a strange locality they may not have observed the material of which the house was built nor whether there were porches on it. However, when the evidence is directed to the specific act of purchase, prosecuting witnesses, acting as inspectors and charged with the obligation of securing convincing evidence, cannot expect conviction unless their testimony is so consistent as that it can be reconciled.

Jackson very briefly in his examination in chief said that he had bought one-half pint of whiskey from the defendant at his home on High Avenue; that it did not bear the stamp and seal of the State of Ohio,

and defendant had no permit to sell whiskey. by the bottle. On cross-examination these questions were put and answers made:

"Q. What room did you make the purchase?
A. You mean front or back room?
Q. What room in the house?
A. I went into the front room.
Q. How did you get into the front room; does the door enter right into the front room?
A. Sure.
Q. Is there a side door to the house?
A. Probably so. I got in and got what I wanted and got out."

Insofar as we can interpret the questions and answers, it must be assumed that the witness said in response to questions in what room was purchase made, that it was made in the front room. It also seems, although not very definite, that he entered the house by going into the front room. When Mr. DeWine took the stand he said

"We have had a lot of complaints about this man selling whiskey so we thought we would make a buy on him. I drove Inspector Jackson there on 26th., shortly after 10 o'clock. I pulled right along side the house, about ten feet from the back porch. I don't know whether the back porch has a roof but I know he knocked at the back door. I sat in the car. It was about ten feet from the porch. He knocked on the back door and went in the house. After he got in the house, Mr. Brigham here came out and walked down the path, not very far down, and when he came out the door first, when he knocked, he turned the light on. After Jackson got in the house he came out and turned the light off, walked down the path, wasn't very far from the house, and picked this bottle up. He was gone two or three minutes and came back and by that time he opened the door and told Jackson to come out, and stepped over to the side of the porch. I seen Mr. Jackson pay him the money. Jackson got in the car and we drove away."

It will be noted that in Mr. DeWine's testimony he mentions a back porch several times, which he saw by electric light turned on by an outside switch, although it is probable that there was no back porch on this house and no outside switch. But he goes further and expressly states that the sale of the liquor was made on the outside of the house, that he not only saw the money pass but infers that he saw the liquor transferred from the defendant to Mr. Jackson.

It seems obvious that the testimony of Mr. Jackson and Mr. DeWine cannot be reconciled because clearly inconsistent one with the other. This is not the character of testimony upon which it is safe to convict a man charged with a criminal offense. It is barely possible that Mr. Jackson did not mean to testify that the sale was made in the house, but surely that is the only conclusion that can be drawn from his statements.

If that which one of these witnesses say is true, the statement of the other is erroneous. Both were in position to know the facts and unequivocally stated them. They are not in the class of disinterested witnesses who may be expected, because of failure to carefully observe a situation, to differ as to its occurrence. Because of the apparent contradiction in their testimony upon a controlling, material fact in the case, even though made under inadvertence, we cannot support the judgment.

We recognize that cases such as the one before us must, because of the congestion in the Municipal Court, be tried under certain stress. This, however, does not justify disregard of the substantial rights of any defendant required to answer to a criminal charge and to be tried at the bar of justice.

Before a defendant is pronounced guilty the orderly processes of the court should be observed and nothing but proper evidence admitted to the end that only that which has probative effect should be permitted to operate for or against him. An examination of this record is convincing that much therein found should never have been permitted to be introduced, even though no objection was interposed to its admission.

This defendant, no matter how inconsequential the charge against him may seem, will if eventually adjudged guilty and sentenced, as herein pronounced, in all probability be compelled to suffer incarceration and lose his liberty for a considerable period of time. In this case as much as several hundred days.

Because of the state of the record in the particulars to which we have generally alluded, and because of the situation developed in the particulars to which we have specifically adverted, the judgment will be reversed and cause remanded for new trial.

BARNES, PJ, and GEIGER, J, concur.